1      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
2

3 ------------------------------------X
               :
4 SANDOZ,         : 17-CV-05447 (VSB)
               :
5        Plaintiff, : 500 Pearl Street
               : New York, New York
6      v.      :
               :
7 DOE, *et al.*,     : April 17, 2019
               :
8        Defendants. :
 ------------------------------------X
9

10    TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONIC CONFERENCE
     BEFORE THE HONORABLE SARAH NETBURN
11      UNITED STATES MAGISTRATE JUDGE

12
 APPEARANCES:
13
 The Plaintiff:      MARTIN SANDOZ, *Pro Se*
14             DIN No. 16-A-4310
             Clinton Correctional Facility
15             PO Box 2000
             Dannemora, New York 12929
16
 For the Defendants:    ADRIA JASMINE BONILLAS, ESQ.
17             New York City Law Department
             Office of the Corporation Counsel
18             100 Church Street
             New York, New York 10007
19

20 Court Transcriber:     RUTH ANN HAGER, C.E.T.**D-641
             TypeWrite Word Processing Service
21             211 N. Milton Road
             Saratoga Springs, New York 12866
22

23

24

25


 Proceedings recorded by electronic sound recording,
 transcript produced by transcription service

2

1          THE COURT:  Good morning.  This is Judge Netburn.
2   Who do we have on the phone?
3          MS. BONILLAS:  Good morning, Your Honor.  Adria
4   Bonillas, counsel for the City of New York.
5          THE COURT:  And Mr. Sandoz, are you there?
6          MR. SANDOZ:  Si.
7          THE COURT:  Can you understand what I'm saying?
8          MR. SANDOZ:  (Responds in Spanish.)
9          THE COURT:  How are you able to prosecute this case?
10   How are you able to bring your claims?
11          MR. SANDOZ:  I don't speak English.  I can't
12   understand too much.
13          THE COURT:  Okay.  Is somebody helping you with your
14   case?
15          MR. SANDOZ:  No, not right now.
16          THE COURT:  Okay.
17          MS. BONILLAS:  Sorry, Your Honor, if I may, I do
18   believe that Mr. Sandoz has indicated during his deposition and
19   in a portion of the discovery responses he provided that there
20   appears to be a law clerk in the correctional facility that
21   works at the law library who has been assisting Mr. Sandoz with
22   discovery and with his claim generally.
23          THE COURT:  Okay.  Well, let's be brief because I
24   want to make sure he understands what's happening.  Can you
25   just tell me, Ms. Bonillas, what it is that you believe is

3

1   outstanding?

2          MS. BONILLAS:  Yes, Your Honor.  So he -- Mr. Sandoz

3   provided written responses to our interrogatory requests, but

4   not for the request for document production.  And based on his

5   statement at the deposition and his interrogatory responses we

6   believe that he may have copied the relevant documents that we

7   don't yet have.

8          THE COURT:  What are the documents?

9          MS. BONILLAS:  The first one would be a grievance.

10  Mr. Sandoz appeared to indicate at the deposition that he had a

11  copy of a grievance or some sort of complaint that he filed in

12  regards to this incident.  I have checked with Rikers Island

13  and we have no indication that that was filed.  So if he does

14  have a copy I think that that would be very relevant to

15  provide.  And if he does not, then providing some sort of

16  response indicating such would also provide some clarification.

17         The second one -- the second document is that

18  Mr. Sandoz is claiming that he suffered emotional damages and

19  that he has had mental treatment due to -- as a result of this

20  incident.  We requested a release for medical records,

21  including mental health treatment prior to this incident, but

22  we don't have a release yet from him for that.  And the third

23  one is that Mr. Sandoz indicated in his interrogatory responses

24  that he suffered economic damages because he was denied the

25  ability to work at Rikers Island as a result of this incident.

4

1   Again, I'm checking with my client but as of yet I do not have

2   any indication that those documents exists.

3           So to the extent that Mr. Sandoz has some sort of

4   document that says that he applied to work at Rikers or even

5   that he was denied the ability to work at Rikers, if he has

6   possession of those that would be very helpful to have.  It

7   would narrow the scope of discovery that we're now trying to

8   explore based on his responses.

9           THE COURT:  Okay.  Mr. Sandoz.

10          MR. SANDOZ:  Uh-huh.

11          THE COURT:  I'm going to issue an order.  I will

12  write it down and so you can show it to somebody to translate

13  for you, okay?

14          MR. SANDOZ:  All right.  Thank you.

15          THE COURT:  Okay.  What the lawyer is asking for are

16  documents that you have or that she thinks you have.  And so in

17  this order I'm going to direct you to turn over those

18  documents, if you have them, okay?

19          MR. SANDOZ:  Okay.

20          THE COURT:  And if you don't then you can't use them

21  in this case.

22          MR. SANDOZ:  Okay.

23          THE COURT:  Okay.  So this is your last chance if you

24  have these documents.  Do you understand that?

25          MR. SANDOZ:  Yeah.

1          THE COURT:  Okay.  Ms. Bonillas, the second category

2    was for mental treatment that he received prior to coming to

3    Rikers.  Is that what you're asking for?

4          MS. BONILLAS:  Yes, Your Honor.  We typically -- a

5    release typically is for mental health treatment or medical

6    records from the five years prior to the incident, so that's

7    what the release would be.  So if he had treatment before he

8    was at Rikers Island through some medical provider, we would

9    need a release from that provider in order to have access to

10   those records.

11         THE COURT:  This is mental health records you're

12   asking for?

13         MS. BONILLAS:  We have -- we also asked for

14   physical -- medical -- or excused me, medical records related

15   to any physical treatment that he had, but I think in light of

16   the fact that we do have a substantial number of Rikers medical

17   records for any physical injuries, I think we can forego that

18   release.

19         So, yes, to answer your question, it's just for

20   mental health.

21         THE COURT:  Okay.  Mr. Sandoz?

22         MR. SANDOZ:  Yes.

23         THE COURT:  Did you ever see a doctor or any

24   provider -- any person before you went to Rikers to talk about

25   your feelings or emotions?

6

1        MR. SANDOZ:  Before, you said?

2        THE COURT:  Before you went to Rikers --

3        MR. SANDOZ:  Yeah.

4        THE COURT:  -- did you ever go to a doctor for care

5   for your mental health?

6        MR. SANDOZ:  Nah.

7        MS. BONILLAS:  Your Honor, he indicated at his

8   deposition that he did receive mental health treatment prior to

9   going to Rikers so that's where our basis is coming from.

10        THE COURT:  Did he tell you where?

11        MS. BONILLAS:  No, he did not.

12        THE COURT:  Okay.  Sir, are you --

13        MR. SANDOZ:  Ah.

14        THE COURT:  The question I'm asking is whether you

15   went to any doctor or counsel or social worker or anyone to get

16   help dealing with your emotions and your mental health.

17        MR. SANDOZ:  You're saying mental health?

18        THE COURT:  Yes.

19        MR. SANDOZ:  Yeah, yeah.

20        THE COURT:  Do you know who that was?

21        MR. SANDOZ:  Yeah, yeah, in Brooklyn.

22        THE COURT:  In Brooklyn?

23        MR. SANDOZ:  Yeah.

24        THE COURT:  Do you remember the name of that person

25   or that company?

7

 1          MR. SANDOZ:  Nah, nah, [indiscernible] the hospital,

 2  but I don't know name.

 3          THE COURT:  Is that Brooklyn Hospital or a hospital

 4  in Brooklyn?

 5          MR. SANDOZ:  The hospital in Brooklyn.

 6          THE COURT:  Do you know the name of the hospital?

 7          MR. SANDOZ:  Nah.

 8          THE COURT:  Okay.  Well, Ms. Bonillas, I don't think

 9  we're going to get a release.

10          MS. BONILLAS:  Okay.  I understand.

11          THE COURT:  So you can do with the fact that he went

12  with -- you know, however you think is appropriate.

13          MS. BONILLAS:  Okay.

14          THE COURT:  Okay.  Mr. Sandoz.

15          MR. SANDOZ:  Uh-huh.

16          THE COURT:  I'm going to issue an order today.  It's

17  going to ask you for two types of documents.

18          MR. SANDOZ:  All right.

19          THE COURT:  The first is any documents that you

20  filled out at Rikers involving what happened to you, the

21  attack, okay?

22          MR. SANDOZ:  All right.

23          THE COURT:  So if you filed any complaints or any

24  grievances with the correction officers, you need to turn that

25  over.

8

1        MR. SANDOZ:  All right.

2        THE COURT:  Did you do that?

3        MR. SANDOZ:  Yeah.

4        THE COURT:  Do you have a copy of that in your files?

5        MR. SANDOZ:  I've got -- I can find it.  The

6   grievance [indiscernible] I'm going to -- I move [ph.] my

7   stuff.

8        THE COURT:  Okay.  Look through your stuff and see if

9   you can find it.

10        MR. SANDOZ:  All right.

11        THE COURT:  Okay.  And then you need to mail a copy

12   to the lawyer.

13        MR. SANDOZ:  All right.

14        THE COURT:  And then the other category of documents

15   I understand that you are saying in this lawsuit that you were

16   not allowed to work at Rikers because of your injury.  Is that

17   correct?

18        MR. SANDOZ:  Yeah.

19        THE COURT:  Did you apply for a job?

20        MR. SANDOZ:  No, no, I apply for --

21   for [indiscernible] they give me job, but I don't apply for

22   job.  I know -- I see [indiscernible] know.  I got -- I can't

23   speak too much.  That's what happened.  I can't explain that

24   they --

25        THE COURT:  Okay.

9

```
 1              MR. SANDOZ:  -- they [indiscernible].
 2              THE COURT:  You're doing a pretty good job.  Did
 3    anybody tell you you cannot work?
 4              MR. SANDOZ:  No, nobody told me that.
 5              THE COURT:  Okay.  Did anybody turn you down when you
 6    applied?
 7              MR. SANDOZ:  No.
 8              THE COURT:  Okay.  So why do you think you can't work
 9    because of the injury?
10              MR. SANDOZ:  I laid down [indiscernible] for six
11    months like I can't do nothing for six months.
12              THE COURT:  Okay.  So you think you can't work.  It's
13    not that Rikers told you, no, you can't work.  It's your
14    choice?
15              MR. SANDOZ:  Yeah.
16              THE COURT:  Is that right?
17              MR. SANDOZ:  Yeah, they -- they [indiscernible] told
18    me he no work for -- for [indiscernible] months but he told me
19    that he told me, "You can't do nothing right now, but you
20    got -- you got -- you [indiscernible] like that."
21              THE COURT:  Who told you that?
22              MR. SANDOZ:  The doctor told me that.
23              THE COURT:  The doctor said, don't work for four
24    months?
25              MR. SANDOZ:  Yeah.
```

```
1          THE COURT:  Okay.  And so did you ever try to work
2    and they said no?
3          MR. SANDOZ:  Yeah.  I no work for seven months.
4          THE COURT:  Okay.  All right.  Thank you . That's
5    helpful.
6          So, Ms. Bonillas, I think I'm going to direct that he
7    provide whatever grievance he's filed.  It sounds like he has
8    access to that, but the other categories I think you're not
9    going to get any more documents.
10         MS. BONILLAS:  I understand.  Thank you, Your Honor.
11         THE COURT:  Okay.
12         MS. BONILLAS:  If I may I just have one question.
13   Currently on the schedule Mr. Sandoz and I have a scheduled
14   telephone conference, I believe, with Judge Broderick at 11
15   a.m., but it's a post-discovery conference.  I don't know if
16   that's something that is going to be adjourned or if we should
17   assume that that's still going forward.
18         THE COURT:  Is that on May 3rd?
19         MS. BONILLAS:  It is, yes.
20         THE COURT:  I would assume it's still going forward,
21   but I can speak with Judge Broderick and he can issue an order
22   if it's not.
23         MS. BONILLAS:  Okay.
24         THE COURT:  But it sounds like if anyone is going to
25   be filing any motions, that's the time to discuss that.
```

11

```
 1          MS. BONILLAS:  Okay.

 2          THE COURT:  Now let me ask one final question before

 3   I let everybody go.  Is the City interested in trying to settle

 4   this case?

 5          MS. BONILLAS:  Currently we have taken a no-pay [ph.]

 6   position on this case.

 7          THE COURT:  Okay.  And that will be your view through

 8   summary judgment?

 9          MS. BONILLAS:  I believe so.  Yes, Your Honor.

10          THE COURT:  Okay.  If that changes I'm happy to have

11   a telephone settlement conference and to see if we can find a

12   way to settle this case.

13          MS. BONILLAS:  Okay.  Thank you, Your Honor.

14          THE COURT:  Okay.  Okay.  Mr. Sandoz, do you have any

15   questions for me?

16          MR. SANDOZ:  No.

17          THE COURT:  Okay.  So you'll get my order.  It's

18   going to tell you to turn over this grievance document, so

19   start looking for it.

20          MR. SANDOZ:  All right.  Right, thank you.

21          THE COURT:  Okay.

22          MR. SANDOZ:  All right.  Thank you.

23          THE COURT:  All right.  Mr. Sandoz.

24          MR. SANDOZ:  Yeah.

25          THE COURT:  I just asked the City if they want to
```

12

1  settle this case and they said no.  But between you and me --

2             MR. SANDOZ:  Yeah.

3             THE COURT:  -- you should think about whether there

4  is a settlement amount you would accept to resolve this case.

5  I think if you are reasonable the City would consider a

6  settlement number from you.  Okay?

7             MR. SANDOZ:  Yeah.

8             THE COURT:  You know, sometimes the City will settle

9  these cases for maybe a few hundred dollars, sometime maybe

10  even a few thousand dollars.  And so if you think that you

11  would be willing to settle for a number like that, it makes

12  sense to tell the lawyer.

13             MR. SANDOZ:  All right.

14             THE COURT:  Okay?

15             MR. SANDOZ:  All right.

16             THE COURT:  Have you thought about that yet?

17             MR. SANDOZ:  Nah.

18             THE COURT:  Okay.

19             MR. SANDOZ:  I can't understand too much English.

20  That's what happens.  I mean, I understand a little bit, but

21  not too much.

22             THE COURT:  Okay.  I understand.  Hopefully you get

23  the idea of what I'm saying, that if you would take a couple

24  hundred dollars or maybe a couple thousand dollars, one or

25  $2,000 it's worth it to ask the City to see whether they would

13

1   settle your case.

2        MR. SANDOZ:  All right.  I [indiscernible] I can't

3   understood too much.

4        THE COURT:  I'm sorry, what did you say?

5        MR. SANDOZ:  I need interpreter.

6        THE COURT:  Interpreter.

7        MR. SANDOZ:  Yeah.

8        THE COURT:  Okay.  Okay.  Well, Ms. Bonillas, why

9   don't you speak with your clients and see whether or not a

10  settlement conference makes sense.

11       MS. BONILLAS:  Yes, Your Honor.

12       THE COURT:  And then we'll see if we can get an

13  interpreter for that purpose.

14       MS. BONILLAS:  Yes, Your Honor.  I think maybe to

15  assist Mr. Sandoz I can request a copy of a transcript of this

16  telephone conference and if he's having -- if he's receiving

17  assistance with the law clerk in the law library maybe that

18  person can also assist him in making a demand for the City to

19  consider.

20       THE COURT:  Terrific.  Please do that.  Just contact

21  my deputy so we can get that done.

22       MS. BONILLAS:  Okay.

23       THE COURT:  Great.  Okay.  Thank you everybody.

24       MS. BONILLAS:  Thank you.

25       MR. SANDOZ:  All right.  Thank you.

14

1          I certify that the foregoing is a court transcript

2     from an electronic sound recording of the proceedings in the

3     above-entitled matter.

4

5                                    _____

6                                    Ruth Ann Hager, C.E.T.**D-641

7     Dated:   June 11, 2019