UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| | |
|---|---|
| MARTIN SANDOZ, | AFFIDAVIT OF PLAINTIFF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANT |
| Plaintiff, | |
| -against- | |
| THE CITY OF NEW YORK, COMMISSIONER OF NEW YORK CITY DEPARTMENT OF CORRECTIONS CYNTHIA BRANN, JOHN DOE 1, JOHN DOE 2, | 17 CV 5447 (VSB) (SN) |
| Defendants. | |

-----------------------------------------------------------------

STATE OF NEW YORK)
                 )ss:,
COUNTY OF CLINTON)



Martin Sandoz # 16-A-4310, being duly sworn, deposes and says:

1. I am the Plaintiff in the above-entitled action, and makes this affidavit in opposition to the defendant's motion for summary judgment.

2. I am over the age of 18 years old and is currently incarcerated at the Clinton Correctional Facility, located at P.O. Box 2001, Dannemora, New York 12929.

3. I make this affidavit in opposition to the defendant's motion for summary judgment based on personal knowledge and/or information and belief. All statements made herein are true and correct to the best of my knowledge except for those stated upon information and belief and as those matters I believe them to be true, and upon the grounds that:-

4. Plaintiff respectfully request that this Court review the Deposition held on February 8, 2019, of plaintiff Martin Sandoz taken by defendant.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-26-19

5. On or about June 20, 2019, I received the defendant's motion for summary judgment, where the defendant stated the following points:-

### POINT I

PLAINTIFF FAILED TO EXHAUST
HIS ADMINISTRATIVE REMEDIES

### POINT II

DEFENDANT COMMISSIONER BRANN
HAD NO PERSONAL INVOLVEMENT IN
PLAINTIFF'S ALLEGED CONSTITUTIONAL VIOLATION

### POINT III

PLAINTIFF FAIL TO ALLEGE A
CLAIM AGAINST THE CITY OF NEW YORK

### POINT IV

PLAINTIFF'S FAILURE TO PROTECT
CLAIM FAILS AS A MATTER OF LAW

### STATEMENTS OF FACTS

6. On February 8, 2019, the Plaintiff was deposed by the defendant's attorneys.

7. Plaintiff will now rely on a part of the disposition as reference to his opposition.

8. Plaintiff opposes the defendant's motion for summary judgment and request for a dismissal of the defendant's motion for summary judgment as a matter of law which is stated more fully in the following memorandum of law which is a part of this affidavit:-

## POINT I

## PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

**FAILURE TO EXHAUST REMEDIES**

Plaintiff presented a copy of the grievance which was written by the plaintiff after the assault, but which was not properly filed by the administration in an attempt to cover up the violations. **(See Exhibit "A" a copy of the grievance attached)**

Plaintiff testified under oath at the deposition to the occurrence of the incident and that he was then threatened with a knife by the Blood Gang Members, who entered his cell after the assault, not to say anything to any one about the assault or else they would kill him.

Plaintiff took this threat seriously, as the housing unit was for high classification inmates who had already created some sort of violent act, which included but not limited to murder, and as easy as it was for the Blood Gang Members to assault him and then entered his cell without the correction officers being able to protect the plaintiff, plaintiff feared for his life.

Plaintiff also knew that the officer (Mr. B) working that day was known to be corrupt, meaning that he would allow the Blood Gang Members to do what they wanted to do to the plaintiff if plaintiff complained and got the officer in trouble.

Plaintiff reiterated the steps he took to file his grievance in his disposition under oath, which was done only after plaintiff was place in protective custody by a sergeant to whom plaintiff complained to after seeing the doctor for the continuing pain.

Plaintiff went as far as to write a complaint to the Warden about the assault after he was moved to protective custody, which also went unanswered.

3

Of such plaintiff claim should not be dismissed on defendant's summary judgment for failure to exhaust his administrative remedies as plaintiff tried desperately and cautiously to exhaust his administrative remedies before bringing this §1983 action.

Prisoner adequately alleged that he had attempted to exhaust his administrative remedies before bringing §1983 action against employees of state correctional institutions (SCIs) in which he had been incarcerated, as required by the Prison Litigation Reform Act (PLRA), where prisoner asserted that he had filed the required prison grievance forms, but that the forms were never processed. Civil Rights Institutionalized Persons Act § 7, 42 U.S.C.A. § 1997e(a). Clemens v. Warden SCI Greene, 290 F. Supp. 3d 388 (E.D. Pa. 2018)

If prison authorities thwart inmate's efforts to pursue grievance, administrative remedies may be presumed exhausted under Prison Litigation Reform Act (PLRA), as no further remedies are "available" to him. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a). Bredbenner v. Malloy, 925 F. Supp. 2d 649 (D. Del. 2013)

In deciding a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA), a court first looks to the factual allegations in defendant's motion to dismiss and those in plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true; if, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a). Dimanche v. Brown, 783 F. 3d 1204 (11th Cir. 2015).

The Eleventh Circuit Court of Appeals would adopt the two-part test for determining whether a threat to a prisoner rendered the prison grievance system unavailable, thereby excusing the prisoner's failure to exhaust administrative remedies before filing a court action, which

4

requires the prisoner to provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance, and if he makes such a showing, he must then demonstrate that his belief was objectively reasonable. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a). McBride v. Lopez, 791 F. 3d 1115 (9th Cir. 2015)

Under the burden-shifting regime used to evaluate exhaustion under the Prison Litigation Reform Act (PLRA), a defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy, and, then, the burden shifts to the prisoner, who must show that there is something particular in his case that made the existing and general available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile; the ultimate burden of proof, however, remains with the defendants. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a). Williams v. Paramo, 775 F. 3d 1182 (9th Cir. 2015)

Of such, plaintiff have proven his attempts to exhaust his administrative remedies, the reasons for his reluctance to continue the grievance because of the threat to his life and the fear it caused, and thus defendant's motion for summary judgment should be dismissed and this claim be allowed to be decided by the jury, together with such other further relief as this Court may deem just and proper.

## **POINT III**

PLAINTIFF FAIL TO ALLEGE A

CLAIM AGAINST THE CITY OF NEW YORK

As stated by Plaintiff in the disposition, the Correction Officer on duty the day of the incident opened the cells and did not then closed the cells after the plaintiff exited the cell. The floor officer then left his post unattended to join the other officer who was locked in the office to enjoy a conversation.

It is a well custom occurrence for the Correction Officers that are working in the office and who operates the cell gates, to get lazy and inattentively open the cells, and not close it once the inmates have exited that cell, but in this situation, plaintiff realized after the attack that the officer intentionally allowed the assault to take place, as the Blood Gang Members were in charge of the operations of that housing unit.

On more than one occasion, the floor officers have left the floor unattended, causing inmates to be assaulted by the Blood Gang members on Riker's Island a part of the New York City Correctional Facility, where the incident took place.

These customs of allowing the Blood Gang Members to roam freely in and out of other inmates cells, while extorting and assaulting inmates are noted by the vast amount of inmate on inmate assaults which occurred in that facility.

The location that the plaintiff's cell was at the time, was a high classification housing area, where only the most violent inmates would be living. This was known by the officers on duty that day, but because of the regularity and custom of the officers that worked that house to

allow the Blood Gang Members to rule and run the operation of the housing unit, the plaintiff was assaulted and threatened.

The City of New York was aware of the everyday violence that occurred in this facility, as there are countless law suits against the New York City Department of Corrections by inmates that were assaulted by the Blood Gang Members in the same facility, when the officers opened and left inmates cells without the floor officer being present, causing the inmate to be assaulted by these Blood Gang Members, prior to the plaintiff's incident

A local government unit cannot be held liable under 42 U.S.C.A. § 1983 on a theory of respondeat superior; that is, merely because it employs a tortfeasor. § 93. In order for civil rights plaintiffs to successfully sue a municipal entity under § 1983 they must show that their injuries was caused by a municipal policy, custom, usage, or practice, and this requirement is equally applicable whether the remedy sought is money damages or prospective relief such as an injunction or a declaratory judgment. Los Angeles County, Cal. v. Humphries, 131 S. Ct. 447, 178 L. Ed. 2d 460 (2010).

A local government may be held liable for monetary damages in cases where action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers; Clampi v. City of Palo Alto, 2011 WL 1793349 (N.D. Cal. 2011); however, in the absence of deliberate indifference to an individual's federal rights, § 94. it is only when execution of government policy or custom, whether made by its lawmakers, or by those whose edicts and acts may fairly be said to represent official policy, Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); inflicts the injury complained of

7

that local government unit may be held liable under § 1983. Monell v. Department of Social Services of City of New York, 436 U.S. 658.

A municipal policy or custom may be established in this context even though the custom has not received formal approval through the municipality's official decision-making channels. Abaskiekong v. City of Shelby, 744 F. 2d 1055 (4th Cir. 1984)

For purposes of imposing governmental liability under section 1983, a "custom" differs from a "policy" in that it is not necessary that the custom has received formal approval through the municipality's official decision-making channels. Gausvik v. Perez, 239 F. Supp. 2d 1108 (E.D. Wash. 2002).

In "custom" cases, governmental liability under § 1983 is attributed through a policy maker's actual or constructive knowledge of and acquiescence in the unconstitutional custom or practice.

Even a single act or decision of a municipality's properly constituted legislative body can suffice to hold the municipality liable under § 1983, because even a single act decision by such a body constitutes an act of official policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

Where the act or conduct complained of is that of a subordinate municipal employee or officer, liability can still be imposed on the municipality if the act or conduct in question was pursuant to an official policy of the municipality. Ruge v. City of Bellevue, 892 F. 2d 738 (8th Cir. 1989).

However, a single instance of unconstitutional behavior on the part of a non policy making municipal employee will not suffice to establish the existence of an official policy

8

pursuant to which the employee acted. Davis v. City of Ellensburg, 869 F. 2d 1230 (9th Cir. 1989); Trout v. Buie, 653 N.E. 2d 1002 (Ind. Ct. App. 1995).

In the absence of a formal policy, a § 1983 plaintiff must show a long standing practice or custom which constitutes the standard operating procedure of the municipality, {Trevino v. Gates, 99 F. 3d 911, 45 Fed. R. Evid. Serv. 1143 (9th Cir. 1996) (holding modified on other grounds by, Navarro v. Block, 250 F. 3d 729 (9th Cir. 2001)}, and the existence of such a practice or custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy. Trevino v. Gates, 99 F. 3d 911, 45 Fed. R. Evid. Serv. 1143 (9th Cir. 1996) (holding modified on other grounds by, Navarro v. Block, 250 F. 3d 729 (9th Cir. 2001).

Of such the defendant's motion for summary judgment should be dismissed as plaintiff has satisfied the requirements to prove a claim against New York City and the Department of Correction Services and thus, this claim should be decided by the jury, together with such other further relief as this Court may deem just and proper.

## POINT IV

### PLAINTIFF'S FAILURE TO PROTECT CLAIM FAILS AS A MATTER OF LAW

**FAILURE TO PROTECT CLAIM**

It is undisputed that the plaintiff was injured, according to the medical report. It is undisputed that the correction officer working that day neglected his post and thus neglected his duty to protect the plaintiff from cruel and unusual punishment by being intentionally assaulted by another inmate.

Plaintiff testified under oath at the deposition, that the correction officer working that day was (Mr. B), a known corrupted officer.

Correction Officer Mr. B allowed the plaintiff cell to be opened, intentionally left his post unattended to join the other officer in the office in order to allow the Blood Gang Members to assault the plaintiff.

Plaintiff screamed while being assaulted which was heard by officer B and the other officer in the office, who both ignored the plaintiff and allowed the Blood Gang Members to beat and assault the plaintiff, in order to show that the Blood Gang Members ruled and ran the operations of the housing unit. (**See Exhibit "B"** a copy of the incident report)

Officer B then allowed the plaintiff to be threatened in his own cell by the Blood Gang Members after the assault, so he would not then be in any trouble with the administration if the grievance was written on that day, while the injuries were fresh.

It is undisputed that the housing unit was a high classification unit which housed only the most violent inmates and of such needed more than one officer to pay attention to the inmates at all times. One officer (Mr. B) was or should have been posted on the floor for immediate attention if an assault took place, for which he abandoned intentionally, in order to allow the Blood Gang Members to inflict injuries on the plaintiff, to show that they controlled the housing unit.

Prison officials have a duty to protect inmates from violence by other inmates. Johnson v. Johnson, 385 F. 3d 503 (5th Cir. 2004); U.S. v. Lanham, 617 F. 3d 873 (6th Cir. 2010), cert. denied, 131 S.Ct. 2443, 179 L. Ed. 2d 1235 (2011).

Those officials have a general duty to exercise reasonable and ordinary care to prevent violence between inmates and a specific duty to an inmate to protect him or her from an attack, but the latter arises only when they actually know of or have reason to anticipate a specific impending attack. Butler ex rel. Biller v. Bayer, 123 Nev. 450, 168 P. 3d 1055 (2007)

They incur liability for the breach of that duty when they were aware of a substantial risk of serious injury to an inmate but nevertheless failed to take appropriate steps to protect the inmate in danger. Rice ex rel. Rice v. Correctional Medical Services, 675 F. 3d 650 (7th Cir. 2012)

Liability may also be imposed for violations of a prisoner's right to reasonable protection from the constant threat of violence by fellow inmates. Walsh v. Brewer, 733 F. 2d 473 (7th Cir. 1984); Prater v. Dahm, 89 F. 3d 538 (8th Cir. 1996)

However, the reasonableness of prison officials' actions may be a question for the jury, particularly where there is an allegation that they failed to take protective measures, even after

prior violent attack and being advised of continued threats and risks. Hayes v. New York City Dept. of Corrections, 84 F. 3d 614 (2d Cir. 1996)

To establish an Eighth Amendment failure to protect claim, a prisoner must show that the prison official was deliberately indifferent to a substantial risk of serious harm, and, in doing so, the prisoner must satisfy two requirements, one objective and one subjective; the first requirement test whether, viewed objectively, the deprivation of rights was sufficiently serious, that is, whether the inmate is incarcerated under conditions posing a substantial risk of serious harm, and the second requirement is subjective and requires that the inmate prove that the prison official had a sufficiently culpable state of mind. U.S.C.A. Const. Amend. 8. Walls v. Tadman, 762 F. 3d 778 (8th Cir. 2014)

An official violates the duty to protect inmates from violent assault from the hands of fellow inmates only if the official knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Klebanowski v. Sheahan, 540 F. 3d 633 (7th Cir. 2008)

A fact finder may conclude that officials knew of a substantial risk from the very fact that the risk was obvious. Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed 2d 811 (1994)

The mere negligent failure of prison officials to protect an inmate from attack by another inmate is not actionable. Davidson v. Cannon, 474 U.S. 344, 106 S. Ct 668, 66 L. Ed. 2d 677 (1986).

Of such, plaintiff has proven that the correction officer, Mr. B, acted nefariously, recklessly and intentionally to cause the plaintiff's injuries from the assault by the Blood Gang Members, and thus the motion for summary judgment by defendant should be dismissed, and this claim should be decided by the jury, together with such other further relief as this Court may deem just and proper.

Respectfully Submitted,

_____
Martin Sandoz # 16-A-4310
Plaintiff, Pro Se,
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929.

Sworn to before me this

17th day of December, 2019.

_____
Notary Public

JOHN ANDREW FARRELL
Notary Public, State of New York
No. 01FA6381949
Qualified in Clinton County
Commission Expires 10/15/2022



TO: Greviance committee

From: Martin Sandoz

Date: 4-16-16

Reason of complaint: Fail to Protect a helpless inmate

The reason i write to you today, is to make a complaint on a incident that took Place on the date of 3-20-16. In that date the department of correctoins Failed to safely secure me in a safe housing area. I was placed into a housing area and then left alone with muiltiple inmates and no corrections officers to watch over all of us. I was left alone witch in result i ended up getting badly beaten with no resistance from officers because they were not there to control the situation. the corrections policy of care, custody and control Failed to exersize that same policy they say to obtain.

I respectfully ask that the department of corrections investigate the matter at hand and hold the officers who failed to protect me accountable for this matter. I have suffered severely both mentaly and Physicaly.

Martin Sandoz

# Exhibit B

B

# INCIDENT REPORT FORM

**PRINT OR TYPE ALL INFORMATION**

370

FACILITY: AMKC

DATE OF REPORT: 4/15/16

DATE OF INCIDENT: / /

TIME OF INCIDENT: 1930

LOCATION: West Clinic

TYPE OF INCIDENT: Serious Injury

SUBMITTED BY: Wilkinson (LAST NAME) (FIRST NAME)   CO (RANK)   9005 (SHIELD #)

POST ASSIGNED AT TIME OF INCIDENT: W17L Clinic

TOUR WORKING AT TIME OF INCIDENT: ( ) 11-7   ( ) 7-3   (X) 3-11   ( ) other

**IF FORCE WAS USED:** Include in the section below the specific events and actions by the inmate(s) which led to or caused the incident, the actions which made the use of force necessary in the circumstances, and the type and extent of force used. Provide as much detail as possible.

**DESCRIBE INCIDENT IN DETAIL ("WHO", "WHAT", "WHERE", "WHEN", "WHY")**

On 4-15-16 at approx 1930 hours I CO Wilkinson #9005 assigned to W17L Clinic on the 1500X 2331 hours tour Inmate Sandoz, Martin # 141 15 06211 /02656946M Notify Follow Up Doctor he claime that he hurt his Rib When an Unknown Inmate hit him from behind a month ago in QL11.

(FOR ADDITIONAL SPACE USE FORM 600R)

ADDITIONAL INFORMATION ➤ OTHER SIDE

**DEF 000006**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| | |
|---|---|
| MARTIN SANDOZ, | **AFFIDAVIT OF SERVICE** |
| Plaintiff, | |
| -against- | |
| THE CITY OF NEW YORK, COMMISSIONER OF NEW YORK CITY DEPARTMENT OF CORRECTIONS CYNTHIA BRANN, JOHN DOE 1, JOHN DOE 2, | 17 CV 5447 (VSB) (SN) |
| Defendants. | |

-----------------------------------------------------------------

STATE OF NEW YORK)
           )ss:,
COUNTY OF CLINTON)

I Martin Sandoz # 16-A-4310, being duly sworn, deposes and says:

1. I am the plaintiff in the above-entitled complaint and make this affidavit of service to establish service upon the below named parties pertaining to (a) Affidavit of Plaintiff in Opposition of Motion for Summary Judgment by Defendant, which was placed in a sealed envelope and placed in the U.S. postal box located at the Clinton Correctional Facility, Box 2001, Dannemora, New York 12929, on December 17, 2019, and served upon the below named parties:-

i)  Honorable Vernon S. Broderick
    United States District Court
    Southern District of New York
    500 Pearl Street
    New York, New York 10007

ii) Mr. Zachary W. Carter
    Corporation Counsel of the City of New York
    Attorney for Defendant
    100 Church Street, Third Floor
    New York, New York 10007
    Of Counsel: Adria J. Bonillas

Sworn to before me this

17th Day of December, 2019.

_____
Notary Public
JOHN ANDREW FARRELL
Notary Public, State of New York
No. 01FA6381949
Qualified in Clinton County
Commission Expires 10/15/2022

Respectfully Submitted,

_____
Martin Sandoz # 16-A-4310
Plaintiff, Pro Se,
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929.

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS and COMMUNITY SUPERVISION
CLINTON CORRECTIONAL FACILITY
CORRESPONDENCE DEPT.

TO: Sandoz Martin

DIN: 16A4310

CELL LOCATION: UH-9-4

FROM: CORRESPONDENCE DEPARTMENT   -- RETURN OF OUTGOING MAIL-- ADVISORY

DATE: 12\18\19.

Per Directive #4421 and #4422 this mail is being returned to you for the following reason(s):

PLEASE BE AWARE THAT WHENEVER AN ENVELOPE IS RETURNED TO YOUR CELL FOR ANY REASON IT MUST BE OPENED FIRST IN THE MAIL ROOM TO ENSURE THAT THERE IS NO CONTRABAND BEING RETURNED TO THE HOUSING AREA.

1). You are OVER 5 free legal letters this week. You must use stamps or 2706 Disbursement Form.
2). No attorney by this name is registered in NY State.
3). This is NOT legal mail. You must use your own postage.
4). You have $_____ left on your weekly legal postage allowance. Your own stamp and/or disbursment is necessary for $_____, the remaininng amount owed. **Or wait until next week when your available funds will be renewed.
5). A 2708 Advance form can only be used for legal mail when you have insufficeint funds. You must have the address of where you are sending to and your cell location on the Advance.
6). Advance for "special handling" will not be approved unless required by court order, court rule, or statue.
7). Must fill out/ attach Certified / Return Reciept properly.
8). You did not have enough of your own stamps for the postage due. I have deducted$ _____ from your weekly Free Legal Balance and affixed that amount to your mail. It has been mailed out. Please note this deduction.
9). A 2706 disbursement can only be used on overweight personal mail.
10). You have filled in the incorrect amount on your 2706 disbursement.
11). Inmate to Inmate mail CANNOT be sealed.
12). Business/ vendor envelopes CANNOT be sealed.
13). Oversized envelopes must be inspected. Get C. O. to inspect, Hall Capt. Stamp, sign, date back flap of envelope.
14). Foreign mail $_____ postage due. Fill out 2706 disbursement and return it with this letter.
15). Must have COMPLETE address.
16). Inmate to Inmate mail MUST be approved. This name is not on your approval list in this office. Please contact your counselor.
17). Your name and ID number, along with FULL NAME AND ADDRESS OF THIS FACILITY, must appear on the upper left hand corner on the front corner of the envelope.
18). Full name of the facility along with your name and ID# must appear on the back flap of the envelope.
19). Not permitted to solicit for goods, money, or services.
20). Per Directive #4422, III, B, 14: A facility may restrict what appears on the outside of an outgoing envelope. Please remove comments, drawings, etc. from the envelope and then re-submit.
21). Mail to/from unrelated minors (under age 18) requires prior written approval from the minor's parent or legal guardian.
22). Incarcerated name must be used.
23). The postage stamp you attempted to use is void. It is illegal to re-use stamps.
24). Must have your own postage on personal mail.
25). $_____ Postage needed - stamps $_____ = $_____ Postage Due.
26). Over 1 ounce / non-standard size $_____ postage due. Fill out a 2706 and return it with the letter.
(27). Other: can't process you are on a commissary hold

Martin Sandor # 16A4310
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

USM3
SDNY

Honorable Vernon S. Broderick
United States District C[ourt]
Southern District of N[ew York]
500 Pearl Street
New York, New York

CLINTON CORRECTIONAL FACILITY

USPS

FOREVER USA PURPLE HEART
FOREVER USA PURPLE HEART
PURPLE HEART