UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                                                  :
MARTIN SANDOZ,                                    :
                                                  :
                              Plaintiff,          :
                                                  :
              - against -                         :
                                                  :
                                                  :
JOHN/JANE DOE, et al.,                            :
                                                  :
                              Defendants.         :
                                                  :
--------------------------------------------------------X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #: _____           │
│ DATE FILED:  6/18/2020            │
└──────────────────────────────────┘
```

17-CV-5447 (VSB)

**OPINION & ORDER**

Appearances:

Martin Sandoz
Dannemora, New York
*Pro se Plaintiff*

Adria Jasmine Bonillas
Melissa Wachs
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Martin Sandoz brings this action pro se pursuant to 42 U.S.C. § 1983 against

Defendants the City of New York (the "City"); Cynthia Braun ("Braun"), the former

Commissioner of the Department of Correction; the John/Jane Doe Superintendent

("Superintendent Doe") of Anna M. Kross Center ("AMKC"); and two John Doe correction

officers, asserting that they failed to protect him from an attack by another inmate. Before me is

Defendants' motion for summary judgment. Defendants' motion is GRANTED in part and

DENIED in part. Because Plaintiff has failed to show a municipal policy or custom, the motion

is GRANTED as to the claims against the City of New York and Braun.  However, Defendants'
motion is DENIED to the extent that the complaint is not dismissed in its entirety because
Plaintiff's claims against the Doe Defendants remain.

## I.      Factual Background[1]

In March of 2016, Plaintiff was incarcerated at AMKC, a correctional facility on Rikers
Island, New York.  (Defs.' 56.1 ¶ 1.)[2]  At the time, he was housed in "Quad Lower 11," which
contained a common area where inmates watched television and engaged in other recreational
activities.  (*Id.* ¶¶ 2–3.)  Plaintiff refers to Quad Lower 11 as "11 QL" and states that it was a
maximum-security unit.  (Pl.'s Dep. 13:21, 15:9-10.)[3]

On March 20, 2016 at around 8:30 p.m., Plaintiff left his cell and went to the common
area.  (Defs.' 56.1 ¶¶ 3–4.)  Plaintiff alleges that he asked another inmate to ask the guard to
open his cell so that he could get out.  (Pl.'s Dep. 25:4-8.)  As he was watching a movie, Plaintiff
was attacked from behind by another inmate.  (*Id.* ¶ 5.)  The attack lasted around one to one and
a half minutes.  (*Id.*)  Plaintiff did not know the name of the inmate at the time of the attack, did
not know why the other inmate had attacked him, and had not had any prior altercations with the
other inmate before the attack.  (*Id.* ¶¶ 7–9.)  At his deposition, Plaintiff also stated that five
other inmates assisted his main attacker by blocking the window and creating noise so that the
correction officers could not see or hear what was going on.  (Pl.'s Dep. 26:16-18, 27:12-28:7.)

---

[1] The facts set forth in this section that are accompanied by citations to Defendants' 56.1 Statement are undisputed.
I have also included certain facts averred by Plaintiff for context, but my inclusion of these facts is not and should
not be construed as a finding that they are undisputed.  Defendants ask me to deem their entire 56.1 Statement
admitted, (*see* Defs.' Reply 2–3, (Doc. 67)), because Plaintiff failed to submit a response; however, as discussed
below, I decline to do so.

[2] "Defs.' 56.1" refers to Defendants' Statement Pursuant to Local Rule 56.2, filed on June 17, 2019.  (Doc. 53.)

[3] "Pl.'s Dep." refers to the transcript of Plaintiff's deposition in this case, taken on February 8, 2019, and filed on the
public docket in connection with this case on January 28, 2020.  (Doc. 68.)

He also alleges that his attackers were all members of "the gang called Los Sangres, the Bloods." (*Id.* 39:12-20; *see also* Pl.'s Aff. 6–7.)[4]

After the attack, Plaintiff testified, he returned to his cell and discovered that his cell door was still open.  (Pl.'s Dep. 33:8-9.)  Shortly thereafter, four inmates who had been present during the attack came to his cell with knives and threatened him.  (*Id.* at 33:5-34:16, 38:13-15, 40:2-5.)

It is undisputed that Plaintiff did not inform correctional staff about what had happened immediately after the attack.  (Def.'s 56.1 ¶ 6.)  However, several weeks later, he reported the attack for the first time, to a doctor.  (*Id.* ¶ 12.)  That report triggered an investigation into the incident, and Plaintiff signed statements about the incident on April 14 and 15, 2016.  (Pl.'s Dep. 58:9-12.) Plaintiff also contends, and Defendants dispute, that he filed a handwritten grievance on April 16, 2016.  (Pl.'s Aff. Ex. A; Pl.'s Dep. 52:8-25.)  Following the investigation, Plaintiff was placed in protective custody.  (*Id.* ¶ 14.)

According to Plaintiff, the attack fractured his ribs, causing him pain that was so severe and intense that he could not sleep for weeks after being injured in the attack.  (Pl.'s Dep. 48:24-49:6-10.)  He also alleges that the attack has left him traumatized such that he now takes medication and panics when there is someone is behind him.  (*Id.* at 68:4-9.)

## II.   Procedural History

Plaintiff commenced this action on July 12, 2017, by providing to prison officials a complaint (the "Complaint"), a request to proceed in forma pauperis ("IFP"), and a prisoner authorization.  (Docs. 1–3.)  The Complaint named the following defendants:  Superintendent of Anna M. Kross Center (John/Jane Doe); Joseph Ponte, Commissioner of New York City

---

[4] "Pl.'s Aff." refers to the Affidavit of Plaintiff in Opposition to Motion for Summary Judgment, filed on December 26, 2019.  (Doc. 64.)

Department of Correction; two John Doe correction officers, the City of New York; and the New York City Department of Correction.  (Doc. 2.)  On November 2, 2017, Chief United States District Judge Colleen McMahon granted Plaintiff's IFP application, (Doc. 6), and the case was reassigned to me on November 6, 2017.

On November 13, 2017, I issued an Order of Service that (1) dismissed the DOC because municipal agencies cannot be sued; (2) substituted the current DOC Commissioner, Cynthia Brann, for former DOC Commissioner Joseph Ponte; and (3) requested that the AMKC Superintendent, Brann, and the City waive service of the summons.  (Doc. 8.)  On December 1, 2017, the DOC filed a waiver of service as to Brann, (Doc. 11), and the New York City Law Department filed a waiver of service as to the City, (Doc. 12.)  On January 30, 2018, the City and Brann filed an answer.  (Doc. 17.)

Plaintiff submitted several letters informing the Court that he did not speak much English.  (Docs. 18, 19.)  On July 26, 2018, following an initial pretrial conference conducted by telephone, I so-ordered the parties' proposed case management plan and scheduling order, which set the close of discovery for January 22, 2019.  (Doc. 26.)  Defendants took Plaintiff's deposition on February 8, 2018.  (*See* Doc. 8.)  On February 20, 2019, Defendants requested an extension of the discovery deadlines and an order compelling Plaintiff to respond to Defendants' discovery requests, including by providing a copy of the grievance he described at his deposition.  (*Id.*)  I granted Defendants' requests by endorsement dated February 21, 2019.  (Doc. 37.)  On April 1, 2019, Defendants submitted a letter informing me that Plaintiff had still not served his discovery responses, (Doc. 39), and I referred the dispute to Magistrate Judge Sarah Netburn, (Doc. 40).  On April 17, 2019, Judge Netburn held a telephone conference.  Plaintiff informed Judge Netburn that he did not speak English and could not understand much.  (Doc. 49, at 2:11-

12.)  Judge Netburn directed Plaintiff to "turn . . . over" a copy of the grievance he had allegedly

submitted.  (*See id.* at 7:19-25, 10:6-9.)  She reiterated this direction by written order issued later

that same day.  (*See* Doc. 46.)

On May 3, 2019, I held a post-discovery conference in this case.  At the conference,

Plaintiff stated that he had sent the grievance to "someone named Sarah or something like that,"

which appeared to be a reference to Judge Netburn.  (Doc. 56, at 2:17-3:17; *see also* Doc. 58.)

Defendants' counsel indicated that Defendants had not received a copy of the grievance.  (*Id.* at

2:24-25.)

On June 17, 2019, Defendants filed a motion for summary judgment, (Doc. 51), along

with a Local Civil Rule 56.2 notice, a Local Civil Rule 56.1 statement, a declaration and exhibits

in support, and a memorandum of law, (Docs. 52–55).  On August 8, 2019, Plaintiff submitted a

letter requesting an interpreter and seeking an update in his case.  (Doc. 58; *see also* Doc. 48.)

By Order dated August 14, 2019, I denied Plaintiff's request for an interpreter and directed

Plaintiff to submit his opposition by October 11, 2019.  (Doc. 59.)  On December 26, 2019,

Plaintiff submitted an affidavit and exhibits in opposition to Defendants' motion, in which he

asked me to review his deposition.  (Doc. 64).  On January 2, 2020, I accepted this filing nunc

pro tunc because of Plaintiff's pro se status, and directed Defendants to provide me with the full

transcript of Plaintiff's deposition.  (Doc. 65.)  Defendants filed a declaration, exhibits, and

memorandum of law in reply on January 15, 2020, (Doc. 67), and filed the transcript of

Plaintiff's deposition on January 28, 2020, (Doc. 68-1).

### III.   Legal Standards

#### A.   *Rule 56*

Summary judgment is appropriate when "there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256 (citation omitted), and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence

in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Nevertheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

### B.   *Local Civil Rule 56.1*

Local Civil Rule 56.1 requires a party moving for summary judgment to submit a statement with numbered paragraphs setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The nonmoving party is then required to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." (*Id.* 56.1(b).) Where a fact set forth by the moving party as undisputed is not "specifically controverted" by the nonmoving party, that fact may be deemed admitted. (*Id.* 56.1(c).) Where the nonmoving party is proceeding pro se and the moving party is represented by counsel, the moving party is to serve and file a notice setting forth these rules. (*Id.* 56.2.) "*Pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1." *Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear Co., Inc., v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)). "Nevertheless, even when there is incomplete compliance with the Local Rules, a court

retains discretion 'to consider the substance of the plaintiff's arguments.'" *Liverpool v. Davis*, No. 17 Civ. 3875 (KPF), 2020 WL 917294, at *6 (S.D.N.Y. Feb. 26, 2020) (quoting *id.*); *see also Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.")

### C. *Pro Se Litigant*

Pro se litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and opposition papers of pro se litigants "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted) ); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) ("District courts should read the pleadings of a pro se plaintiff liberally[,] and [the] same principles apply to briefs and oppositions submitted by pro se litigants." (internal quotation marks omitted)).

However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not

sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a pro se litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (citations omitted).

## IV.   <u>Discussion</u>

As an initial matter, Plaintiff did not submit a response to Defendants' 56.1 Statement. However, given his pro se status I exercise my discretion and examine the record, including Plaintiff's submissions in opposition and his deposition, to evaluate which facts averred by Defendants should be deemed admitted.

I construe the Complaint as pressing a claim under 42 U.S.C. § 1983 for Defendants' failure to protect Plaintiff from the March 20, 2016 attack, in violation of the Fourteenth Amendment.  (*See* Compl. 4.)[5]  Defendants the City and Brann seek "dismiss[al] [of] plaintiff's Complaint in its entirety" on the grounds that (1) plaintiff failed to exhaust his administrative remedies; (2) Brann was not personally involved in any violation of Plaintiff's constitutional rights; (3) Plaintiff has failed to allege a municipal policy or custom; and (4) Plaintiff has adduced no evidence sufficient to raise a triable issue of fact as to his § 1983 claim.  (*See generally* Defs.' Mem.)[6]  I first address the issue of exhaustion of remedies, then turn to the substance of Plaintiff's claims.

---

[5] "Compl." refers to Plaintiff's Complaint, filed on July 18, 2017.  (Doc. 2.)

[6] "Defs.' Mem." refers to Defendants Memorandum of Law in Support of Their Motion for Summary Judgment

A.   *Exhaustion of Remedies*

1.  **Applicable Law**

The Prison Litigation Reform Act precludes a confined individual from bringing any action "with respect to prison conditions," whether under § 1983 or any other federal law, unless he exhausts all available administrative remedies.  42 U.S.C. § 1997e(a).  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), including claims for failure to protect an inmate from another inmate, *see Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. 2018).

Exhaustion must be "proper," meaning that a plaintiff must comply with the particular grievance procedures of the institution to which he is confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 82 (2006).  Thus, to assess whether a plaintiff exhausted his remedies, a court must carefully examine the applicable grievance procedures at a plaintiff's correctional facility available at the time of the events alleged the complaint.  *See Taylor v. N.Y. State Dep't of Corr.*, No. 03 Civ. 1929(PKC), 2004 WL 2979910, at *6 (S.D.N.Y. Dec. 22, 2004) (citing *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004)).  A prisoner need not exhaust remedies if they are not available, including where the grievance procedure is so confusing, unnavigable, or opaque that no reasonable inmate could maneuver through the process.  *Ross v. Blake*, 136 S. Ct. 1850, 1856, 1859 (2016).

2.  **Application**

Plaintiff claims that on April 16, 2016, he submitted a handwritten grievance in English about the March 20, 2016 incident, but that he did not receive a response.  (Pl.'s Aff. 3.; *id.* Ex. A; Pl.'s Dep. 52:8-53:25).

Defendants contend that the grievance process applicable to Plaintiff's failure to protect claim is the New York City Department of Correction's five-step Inmate Grievance Resolution Process ("IGRP").  (Defs.' Mem. 5 (citing N.Y.C. Dep't of Corr., Directive 3376 ("IGRP Directive") (effective Sept. 10, 2012))).  According to Defendants, a plaintiff has not exhausted his remedies until he has proceeded through all five steps prior to commencing his litigation, and a plaintiff who receives no response to an initial grievance bears the burden of proceeding to the second step.  *Id.* (citing cases).  Here, Defendants argue, Plaintiff failed to exhaust his remedies because (1) there is no record of his grievance, and he did not provide a copy of his alleged grievance until his opposition, and (2) even if he did submit a grievance, he failed to follow up by appealing to the next level.  (Def.'s Mem. 5–7; Defs.' Reply 6.)

What Defendants tellingly do not acknowledge is that that the IGRP explicitly provides that "[i]nmate allegations of physical or sexual assault by either staff or inmates are not subject to the IGRP process."  IGRP Directive § IV(B)(2)(b).  Rather, upon receipt of such allegations, prison staff are to refer them to the appropriate entity, enter the information in a database, and provide the inmate with a completed Disposition Form that instructs the inmate on next steps. *Id.* § IV(A)(2).  "Courts in this Circuit have held that claims involving a correctional officer's failure to protect an inmate from another inmate's attack falls within th[e] IGRP process [assault] exception."  *Alicea v. City of New York*, No. 16 Civ. 7347 (LAP), 2020 WL 1528478, at *3 (S.D.N.Y. Mar. 31, 2020).

Based on the plain language of the IGRP Directive—and in the absence of any arguments by Defendants on this point[7]—I find that because Plaintiff's complaint alleges assault by another

---

[7] Defendants do acknowledge as a general matter that "grievances not subject to the IGRP are still grievable – the IGRP is obligated to forward the complaint to the appropriate entity and provide the inmate with the next steps in the relevant process."  (Defs. Mem. 6 (quoting *Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at

inmate, he was not bound to comply with "the full suite of IGRP procedures." *Alicea*, 2020 WL 1528478, at *3. However, it is not clear, on the basis of the record before me, what administrative remedies were, in fact "available" to Plaintiff at the time of the events alleged. *See Ross*, 136 S. Ct. at 1859. The text of the IGRP does not clearly state that an inmate must file a grievance, does not specify any method by which an inmate must report allegations of assault in order to trigger the obligations of prison staff, and does not specify what an inmate's next steps must be. Defendants have not provided any additional evidence or documents that clarify this issue.

"Because failure to exhaust administrative remedies is an affirmative defense," it is defendants' burden to provide "evidence of the administrative remedies that [Plaintiff] has not exhausted" with respect to his failure to intervene claim. *Drew v. City of New York*, No. 16 Civ. 0594 (AJP), 2016 WL 4533660, at *9 (S.D.N.Y. Aug. 29, 2016). Because the only administrative remedy for which Defendants have provided evidence is inapplicable to the claim at issue here, they have not carried that burden and are not entitled to summary judgment. *See id.*; *see also Taylor v. City of New York*, No. 16 Civ. 7857 (NRB), 2018 WL 1737626, at *5 (S.D.N.Y. Mar. 27, 2018) ("[S]everal courts have held that prisoners do not fail to exhaust administrative remedies when they file claims in federal court related to allegations of assault before attempting to complete the IGRP process . . . . Indeed, defendants do not contest that plaintiff was not required to exhaust his remedies in the IGRP process to the extent his claims relate to the assault he suffered" at the hands of another inmate).

Further, even if the IGRP does require Plaintiff to file a formal grievance, *see, e.g.,*

---

*3 (S.D.N.Y. July 31, 2017)).) But they do not directly address the IGRP assault exception, or whether Plaintiff's claim falls within that exception.

*Alicea*, 2020 WL 1528478, at *3 ("The parties agree that when an IGRP exception applies, the inmate must still file a grievance to satisfy his exhaustion requirement, though he need not go through the rest of the IGRP processes"), I find that notwithstanding Defendants' claim that their systems contain no record of Plaintiff's grievance, (*see* Bonillas Decl. Ex. F; Defs.' 56.1 ¶ 17),[8] Plaintiff's allegation that he submitted a grievance, handwritten in English, by dropping it off in a mailbox in the prison library on April 16, 2016, (Pl.'s Aff. 3; Pl.'s Dep. 52:8-53:25), corroborated by his submission of a copy of that grievance, (Pl.'s Aff. Ex. 3),[9] would create a triable issue of fact as to whether Plaintiff did in fact submit that grievance, thereby exhausting his remedies. *Cf. Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) (finding that a form submitted by plaintiff showing the dates on which he had carried out each stage of the grievance process was sufficient to raise an issue of material fact as to whether he had exhausted his remedies.) I also note that Defendants were arguably put on notice of the incident when Plaintiff reported being attacked to a doctor, triggered an investigation by Defendants, and ultimately signed formal statements about the incident. (Defs.' 56.1 ¶ 12.) Accordingly, Defendants' motion to dismiss based upon Plaintiff's alleged failure to exhaust his administrative remedies must be denied.

---

[8] I note that Defendants have made no effort to lay a foundation for or demonstrate the admissibility of the records on which this statement is based.

[9] Defendants request that I ignore this grievance because Plaintiff failed to produce it earlier in the proceedings. I decline to do so. Plaintiff is a pro se litigant and has claimed in several submissions to speak minimal English. Despite this, he seems to have made an effort to provide the grievance: at the post-discovery conference—one month after the conference with Judge Netburn at which she instructed Plaintiff to "turn [the grievance] over," (7:19-25, 10:6-9)—Plaintiff stated that he sent the grievance "to someone named Sarah or something like that." (Doc. 56, at 2:17-3:17.) I note that the copy of the grievance he now submits is stamped "Received SDNY Pro Se Office 2019 May 2," suggesting that he may have in fact mailed a copy to the court following the discovery conference. Moreover, considering the grievance at this stage causes Defendants no prejudice, but ignoring it would cause Plaintiff significant prejudice, as his entire case would likely be dismissed on exhaustion grounds. *See Alicea*, 2020 WL 1528478, at *3, n.2 (considering grievance letters not produced by pro se plaintiff until summary judgment briefing).

**B.**    *Plaintiff's Section 1983 Claims*

### 1. Applicable Law

a.    <u>Principles of Liability Under Section 1983</u>

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Section 1983 does not establish substantive rights, but it provides a means of redress for the deprivation of rights established elsewhere. *Id.* Under § 1983, a plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [§] 1983." (internal quotation marks omitted)). When a prison official is sued, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). The personal involvement of an individual acting as a supervisor of the primary wrongdoer may be established by demonstrating that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

14

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).[10]

A municipality or municipal corporation is liable under § 1983 "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted). Because the language of § 1983 makes clear that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort," a municipality "cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original). In order to succeed on a claim against a municipality under § 1983, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)).

To satisfy the requirement of an official policy or custom, a plaintiff must allege either "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such

---

[10] The Second Circuit has not addressed the impact of *Iqbal* on the *Colon* test. *See Sheldon v. Galant*, No. 18-cv-06320(NSR), 2019 WL 6702137, at *6 (S.D.N.Y. Dec. 6, 2019). Some district courts have questioned the viability of the second, fourth, and fifth *Colon* factors, *see id.* (collecting cases), but "the majority of courts in this Circuit have continued to apply the *Colon* factors absent contrary instructions from the Court of Appeals," *Harrell v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7065(RA), 2019 WL 3821229, at *7 (S.D.N.Y. Aug. 14, 2019). I agree with Judge Ronnie Abrams' assessment in *Harrell* that *Colon* remains "good law" and accordingly apply the test here. *Id.*

an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  A plaintiff cannot show a "policy" or "custom" sufficient to impose municipal liability merely by providing "[p]roof of a single incident of unconstitutional activity . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–824 (1985); *see also Cowan*, 95 F. Supp. 3d at 637 ("Generally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (internal quotation marks omitted)).

Further, the causation prong demands that a plaintiff "prove a causal link between the policy, custom or practice and the alleged injury in order to find liability against a municipality." *Brandon*, 705 F. Supp. 2d at 277; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989)

### b.  Failure to Protect Claim Under the Fourteenth Amendment

Prison officials are constitutionally required to "take reasonable measures to guarantee the safety of the inmates," in particular, "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 832, 833 (1994) (internal quotation marks and citations omitted).  A claim by a pretrial detainee in state custody that prison officials failed to protect him is governed by the Fourteenth Amendment.  *Alicea*, 2020 WL 1528478, at *4. "However, not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety.'" *Luckey v. Jonas*, No. 18 Civ. 8103 (AT) (KNF), 2019 WL 4194297, at *3 (S.D.N.Y. Sept. 4, 2019) (quoting *Farmer*, 511 U.S. at 834).

To state a Fourteenth Amendment failure to protect claim under § 1983, "a plaintiff must show that (1) he was incarcerated under conditions that posed a substantial risk of serious harm, and (2) the defendant acted with deliberate indifference to the plaintiff's safety." *Alicea*, 2020 WL 1528478, at *4; *see also Luckey*, 2019 WL 4194297, at *2. The "deliberate indifference" inquiry has two prongs: "(1) that the failure to intervene or protect the inmate was sufficiently serious such that it caused an unquestioned and serious deprivation of basic human needs and (2) that the defendant acted with a sufficiently culpable state of mind." *Id.* at *3 (quoting *Corley v. City of New York*, No. 14-cv-3202-GHW, 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28, 2017)). "The second prong is measured by an objective standard:  whether a defendant 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" *Id.* (quoting *Darnell v. Pineiro*, 849 F.3d 17, 33, 35 (2d Cir. 2017)).

## 2.  Application

### a.  Defendant City of New York

Plaintiff alleges in his opposition that there was a "custom[] of allowing the Blood Gang Members to roam freely in and out of other inmates['] cells . . . [and] rule and run the operation of the housing unit."  (Pl.'s Aff. 6–7.)  Pursuant to that "custom," he alleges, "[o]n more than one occasion, the floor officers [] left the floor unattended, causing inmates to be assaulted by [] Blood [g]ang members on Riker[s] Island."  (*Id.* at 6.)  Further, the officers frequently "g[o]t lazy and inattentively open[ed] the cells, and [did] not close it once the inmates ha[d] exited the cell."  (*Id.*)  According to Plaintiff, "[the] City of New York was aware of the everyday violence that occurred in this facility as there are countless law suits against the New York City department of Corrections by inmates that were assaulted by the Blood Gang Members in the same facility, when the officers opened and left inmates['] cells without the floor officer being present, causing

the inmate to be assaulted by these Blood Gang Members." (*Id.* at 7.)  Plaintiff appears to be attempting to demonstrate "a practice [by correction officers] so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." *Brandon*, 705 F. Supp. 2d at 276–77.  However, his unsubstantiated, conclusory statements fall far short of meeting his burden of "set[ting] forth specific facts showing that there is a genuine issue for trial" as to the City's *Monell* liability. *Anderson*, 477 U.S. at 248; *see also Ridinger v. Dow Jones & Co. Inc.*, 651 F.3d 309, 317 (2d Cir. 2011) ("[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment" (quoting *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007))).

Plaintiff's bare allegations that the correction officers routinely engage in the type of conduct alleged here are "plainly insufficient" to establish a widespread custom, much less to establish that City officials must have been aware of it. *Rodriguez v. City of New York*, No. 17-cv-12 (KBF), 2018 WL 2371719, at *5 (S.D.N.Y. May 24, 2018) (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (holding that when a plaintiff alleges municipal liability, "allegations which are nothing more than broad, simple and conclusory statements are insufficient" (internal quotation marks omitted))); *Walker v. City of New York*, No. 14-CV-808 (ER), 2015 WL 4254026, at *7 (S.D.N.Y. July 14, 2015) (finding similar allegations "conclusory" and "disregard[ing]" them).  Indeed, Plaintiff's conclusory allegations are contradicted by his own deposition testimony that he believed that under prison policy, at least one guard was supposed to be in the living room at any given time, (Pl.'s Dep. Tr. 23:6-13, 35:19-21).  *See Blue v. City of New York*, No. 14-CV-7836 (VSB), 2018 WL 1136613, at *14 (S.D.N.Y. Mar. 1, 2018) ("discounting the self-serving . . . statements" that contradicted pro se

plaintiff's deposition testimony); *Burnett v. Océ N. Am.*, No. 11 CIiv. 6894 (ER), 2014 WL 4547037, at \*7 (S.D.N.Y. Sept. 12, 2014) (pro se plaintiff's "bald, self-serving assertions . . . fail[ed] to create a genuine factual dispute").  And Plaintiff's allegation about generic, unspecified, and unproven allegations made in "law[]suits" are "the type of conjectural and conclusory assertion that is insufficient to withstand summary judgment."  *Brogdon v. City of New York*, No. 16-cv-8076(LAK)(RWL), 2018 WL 4762981, at \*19 (S.D.N.Y. Aug. 8, 2018), *objections overruled,* No. 16-cv-8076 (LAK), 2018 WL 4757947 (S.D.N.Y. Oct. 1, 2018); *see also Rodriguez*, 2018 WL 2371719 ("citation to unproven allegations in unrelated civil and criminal actions against NYPD officers—including the officers named in this complaint—are irrelevant to the alleged misconduct at issue in this case"); *cf. Walker*, 2015 WL 4254026 (finding plaintiff's listing of thirty-six purportedly similar lawsuits against the City "without indicating whether they resulted in a finding of liability against the Officers or the City or providing any specific details about the cases" be insufficient to withstand a motion to dismiss).

Accordingly, Plaintiff's claim against the City must be dismissed.

b.  <u>Defendant Brann[11] and the AMKC Superintendent</u>

Defendants argue that Plaintiff's claim against Brann must be dismissed because she was not personally involved in the events alleged in the Complaint.  Personal involvement is only a

---

[11] Defendants ask that I deem Plaintiff's claim against Defendant Brann abandoned because Plaintiff failed to respond to their arguments about his claims against her.  (*See* Defs.' Reply 9.)  The cases Defendants cite all involved counseled plaintiffs.  *See id.* (citing *Walker*, 2015 WL 4254016, at \*3 (deeming claims abandoned but nevertheless assessing them on the merits)); *Widget v. Town of Poughkeepsie*, No. 12 Civ. 3459(ER), 2013 WL 1104273, at \*12 (S.D.N.Y. Mar. 18, 2013); *Brandon*, 705 F. Supp. 2d at 268.  Yet the Second Circuit has made clear that "[w]here a partial response to a motion is made—*i.e.,* referencing some claims or defenses but not others—a distinction between *pro se* and counseled responses is appropriate.  In the case of a *pro se,* the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate."  *Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014).  Accordingly, I decline to deem this claim abandoned.

requirement for claims against defendants sued in their individual capacities.  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's *individual liability* in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." (emphasis added)); *see also Disability Rights New York v. New York State Dep't of Corr. & Cmty. Supervision*, No. 1:18-CV-0980 (GTS/CFH), 2019 WL 4643814, at *24 n. 37 (N.D.N.Y. Sept. 24, 2019) ("A showing of personal involvement is not required where a defendant is being sued in his official capacity only.").

Defendant Brann is not sued in the instant action in her individual capacity; rather, she was substituted by this Court for former Commissioner Joseph Ponte in her official capacity pursuant to Federal Rule of Civil Procedure 25(d).  (*See* Doc. 17.)  An official-capacity suit is to be treated as a suit "against [the] entity of which [the] officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985) (internal quotation marks omitted).  Where such claims are asserted alongside claims against the municipality itself, they are frequently dismissed as redundant.  *See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 699 (S.D.N.Y. 2011) (collecting cases).  Moreover, municipal "officials may not be held liable in their official capacities unless the plaintiff can show an underlying unconstitutional municipal policy or custom."  *Osuan v. City of New York*, No. 18cv151, 2019 WL 2544866, at *6 (S.D.N.Y. June 20, 2019) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012)); *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993).

Accordingly, because Plaintiff has not raised a genuine issue of fact as to whether there was a municipal policy or custom that caused his injuries, Plaintiff's claim against Brann must fail.  *See id.*

Defendants do not move on behalf of the John or Jane Doe AMKC Superintendent,

despite my instruction that they waive service on that person's behalf.  (*See* Doc. 17.)  However, the AMKC Superintendent is a city official sued in his or her official capacity, and Plaintiff's claim against him or her must also fail.

"The district court has the power to dismiss a complaint against non-moving defendants, but such power should be exercised cautiously and on notice." *Shtofmakher v. David*, No. 14 Civ. 6934(AT), 2015 WL 5148832, at *12 (S.D.N.Y. Aug. 17, 2015) (quoting *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (sua sponte dismissing claim against non-moving corporate defendant where plaintiff had been unable to establish elements of same claims against appearing defendants), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012)).  Sua sponte dismissal of a claim with respect to a non-moving defendant is appropriate where the issues concerning the non-moving defendant are substantially the same as those concerning the moving defendants, and the plaintiff has had notice and a full opportunity to make out his claim.  *Hecht v. Commerce Clearing House,* 897 F.2d 21, 26 n. 6 (2d Cir. 1990).  Here, because Plaintiff was already on notice of Defendants' arguments with respect to municipal liability and had the opportunity to offer his own arguments in opposition, dismissal of Plaintiff's claims against Brann and the AMKC Superintendent in their official capacities is proper.

c.   <u>John Doe Correction Officers</u>

Although Defendants seek dismissal of the complaint in its entirety, (Defs.' Mem. 1), they do not address Plaintiff's claims against the two John Doe Correction Officers he named as defendants.  I address those claims next.

A plaintiff "'who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party,' may proceed against that party by designating a fictitious name

(a "John Doe") until [he] become[s] aware of that party's identity." *Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017) (quoting N.Y. C.P.L.R. § 1024). While "courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials[,] . . . where a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) (internal quotation marks omitted). At the same time, however, pro se litigants are "entitled to assistance from the district court in identifying a defendant." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 404 n.1 (S.D.N.Y. 2014) (citing *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997)). In conjunction, these principles mean that even after *Valentin*, "if a plaintiff is unable to identify defendants after being afforded the opportunity for limited discovery with assistance from the Court, his claims must be dismissed." *Bishop v. City of New York*, No. 13-cv-9203 AJN, 2016 WL 4484245, at *3 (S.D.N.Y. Aug. 18, 2016) (citing *Valentin*, 121 F.3d at 76 ("This opinion is not intended to preclude a finding by the district court, after further inquiry, that the information available is insufficient to identify the defendant with enough specificity to permit service of process, so that dismissal of the complaint is warranted."))

In addition, any attempt to name a John Doe defendant in a section 1983 case brought in New York is subject to the applicable three-year statute of limitations, *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citation and quotation marks omitted). However, under certain circumstances, a plaintiff who initially names

a defendant as a John Doe because he does not know the defendant's true identity may later substitute in a named party, where, under Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), the amended pleading "relate[s] back to the date of the original complaint," even after the statute of limitations has run out.  *Id.*  Rule 15(c)(1)(A) provides that an amendment relates back to the original pleading when "the law that provides the applicable statute of limitations allows relation back."  Here, as noted above, the law that provide the applicable statute of limitations is New York law, so I look to New York law concerning the question of relation back.  Section 1024 of the New York Consolidate Laws, Civil Practice Law and Rules ("CPLR") provides that

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known.  If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

"New York courts have interpreted this section to permit John Doe substitutions nunc pro tunc." *Hogan*, 738 F.3d at 518–19 (collecting cases).  To take advantage of section 1024, a plaintiff must (1) "'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name,'" and (2) "describe the John Doe party 'in such form as will fairly apprise the party that he is the intended defendant.'"  *Hogan*, 738 F.3d at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.,* 883 N.Y.S.2d 99, 104 (2d Dep't 2009), and finding that plaintiff satisfied the second prong by "describ[ing] with particularity the date, time, and location of the alleged spraying incident" and providing "substantial detail concerning the appearance of his alleged assailants.")

   Plaintiff's opposition indicates that he does wish to pursue his claim against at least one of the John Doe Officers, because he devotes four pages to the substance of his failure to protect claim against an individual referred to in his affidavit as "Correction Officer B."  According to

Plaintiff, "Correction Officer Mr. B allowed the plaintiff cell to be opened, intentionally left his

post unattended to join the other officer in the office in order to allow the Blood Gang Members

to assault the plaintiff" and "acted nefariously, recklessly and intentionally to cause the

plaintiff's injuries." (Pl.'s Aff. 10–13.) These allegations are consistent with Plaintiff's

deposition testimony that there was a "corrupt official" known as "B" who worked the 2 p.m. to

10 p.m. shift and did not sit in or supervise the living room. (Pl.'s Dep. 44:6-21, 45:8-17.)

Plaintiff also testified as to the date and time of the incident and provided a physical description

of "B." (*Id.* at 45:21-46:15.)

However, aside from the generic allegation that "[t]here was no officer in the area and no

one responded to my calls for help," the Complaint did not mention Mr. B or the other correction

officer, (Compl. 5), and neither the Complaint nor any subsequent submissions from Plaintiff

contained any information that would have enabled their identification, even with assistance of

the Court. Because of Plaintiff's failure to provide any details about the Doe Defendants or

about the underlying incident in his Complaint, or to make subsequent requests for assistance, I

did not *sua sponte* issue an order pursuant to *Valentin* directing the New York City Law

Department to attempt to identify them. *See DaCosta v. City of New York*, 296 F. Supp. 3d 569,

598–599 (E.D.N.Y. 2017) (stating that in "[s]o-called '*Valentin* orders' . . . a district court orders

an agency defendant to identify John Doe defendants based on information provided by the [pro

se] plaintiff").

Although Plaintiff did, at his deposition, provide Defendants with information by which

they might have been able to identify "B," nothing in the record demonstrates that Plaintiff made

any affirmative efforts to use that information to discover the identity of any Doe Defendant that

would satisfy the "due diligence" standard of section 1024, despite having had ample time to do

so.  *See Cruz*, 232 F. Supp. 3d at 448 (collecting cases); *Cotto v. City of New York*, No. 16 Civ. 8651 (NRB), 2018 WL 3094915, at *6 (S.D.N.Y. June 20, 2018) ("New York courts stress that any failure to exercise due diligence to ascertain the John Doe's name subjects the complaint to dismissal as to that party." (internal quotation marks omitted)).  Further, the record strongly suggests that Plaintiff's claim against these defendants would ultimately fail on the merits.[12]  It is likely, therefore, that even if Plaintiff could ultimately identify "Mr. B," any proposed

---

[12] First, the Doe Correction Officers are likely protected by qualified immunity.  "The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019) (internal quotation marks omitted).  In *Ross v. City of New York*, the Second Circuit held that the defendant correction officer was entitled to qualified immunity because there was no "controlling precedent" that clearly established that "the mere act of momentarily leaving one's post in a maximum security facility rises to the level of a constitutional violation."  610 F. App'x 75, 77 (2d Cir. July 20, 2015) (summary order).  Since the Doe Correction Officers are not alleged to have engaged in any conduct more severe than the officer in *Ross*, they too are likely entitled to qualified immunity.  Second, Plaintiff has not demonstrated deliberate indifference by the officers sufficient to satisfy the subjective prong.  At his deposition, Plaintiff testified that he believed that at least one of the two correction officers on duty was supposed to be in the gallery in order to guard the entire unit, (Pl.'s Dep. s Dep. 5:19-21), but that they were often both in the adjacent office instead.  (*Id.* 23:6-13).  In particular, Mr. B, who worked an evening shift, typically did not sit in the living room, while one of the morning officers did, (*id.* 44:6-9), and Plaintiff believed Mr. B to be "corrupt" because he "br[ought] stuff to the inmates," (*id.* 44:16-17).  On the evening of the attack, when Plaintiff entered the living room, the correction officers were in the office, (Pl.'s Dep. 27:3-11).  He further testified that when the attack happened at least five other inmates gathered in front of the window between the office and the living room in order to block the officers' view and began yelling and laughing loudly in order to prevent them from hearing what was happening.  (*Id.* 26:16-18, 27:13-28:7).  The attack lasted no longer than a minute and a half.  (*Id.* 29:25-30:1).  In his opposition, Plaintiffs asserts that "Mr. B . . . intentionally left his post unattended to join the other officer in the office in order to allow the Blood Gang Members to assault the plaintiff."  (Pl.'s Opp. 10.)  Discounting the unsubstantiated, conclusory, self-serving, and contradictory assertions made in Plaintiff's opposition, *see Blue*, 2018 WL 1136613, at *14, Plaintiff's testimony, at best, suggests that the correction officers on duty behaved negligently.  Plaintiff does not "allege that there were any prior incidents . . . that would have put [the correction officers] on notice that [his attacker] posed a risk to Plaintiff . . . or that Plaintiff complained to [the correction officers] of any issues with [his attacker]."  *Rennalls v. Alfredo*, No. 12-CV-5300 (KMK), 2015 WL 5730332, at *4 (S.D.N.Y Sept. 30, 2015).  Plaintiff does not even allege that he himself was aware of any special risk.  "Absent clear notice of a risk of harm to the prisoner, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks."  *Fernandez v. New York City Dep't of Corr.*, No. 08 CV 4294(KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2020) (internal quotation marks omitted); *see also Rennalls*, 2015 WL 5730332, at *4.  Courts also reject claims based on an officer's absence from his post as mere negligence.  *Alicea*, 2020 WL 1528478, at *4 (granting summary judgment dismissing claim against correction officer because leaving plaintiff and another inmate—who had not had a prior encounter with each other—unsupervised did not "reflect a deliberate disregard to his safety"); *Fernandez*, 2010 WL 1222017, at *4 (the allegation that tbe officer "was at another station 'joking around' with other officers" during attack "at most support[ed] a claim of negligence"); *Fair v. Weiburg*, 02-CV-9218 (KMK), 2006 WL 2801999, at *6 (S.D.N.Y. Sept. 28, 2006) (on summary judgment, finding subjective prong not met where pretrial detainee in maximum security facility was stabbed when officer was away from the cellblock, where plaintiff never believed he was in danger nor communicated such a fear to defendant).  Thus, because "deliberate indifference describes a state of mind more blameworthy than negligence," *Farmer*, 511 U.S. at 835, Plaintiff's claim against the Doe Correction Officers is likely to fail.

amendment would be rejected as untimely or would not survive summary judgment.

Nevertheless, because Defendants did not move on these grounds, Plaintiff has not yet had the opportunity to respond to these arguments.  Accordingly, within forty-five (45) days of this Opinion & Order, Plaintiff shall submit a letter, affidavit, or memorandum, explaining why this action should not be dismissed against the Doe Defendants for failure to prosecute.

## V.    <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment dismissing the claims against the City and Brann is GRANTED.  Defendants' motion for summary judgment dismissing the entirety of the Complaint is DENIED to the extent in could be read to seek dismissal as to the John Doe Correction Officers.

Plaintiff is directed to submit a letter, affidavit, or memorandum, within forty-five (45) days of this Opinion & Order, explaining why this action should not be dismissed against the John Doe Defendants for failure to prosecute.  His submission should (1) detail any efforts to date to identify the Doe Defendants and (2) address why his claims would survive summary judgment.

The Clerk of Court is directed to mail a copy of this Opinion & Order to the pro se Plaintiff.

SO ORDERED.

Dated: June 18, 2020
       New York, New York

Vernon S. Broderick
United States District Judge